**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANET BURTON, individually and on behalf of all other similarly situated,<br>Plaintiff,<br>v.<br>IYOGI, INC.,<br>Defendant. | No. 13-CV-06926 (DAB)<br><br>**ECF Case** |

**IYOGI, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 3

A. The Parties ..... 3

B. Plaintiff's Allegations Regarding Her Experience with iYogi ..... 3

1. Plaintiff Contacted iYogi After Having Problems with Her Computer and Seeking Technical Support ..... 3

2. Plaintiff's Contract with iYogi ..... 5

C. Procedural History ..... 5

LEGAL ARGUMENT: PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ..... 5

A. Plaintiff's Complaint Fails to State a Claim for Fraudulent Inducement ..... 7

1. The Complaint Fails to Identify a False Representation of Material Fact ..... 8

2. The Complaint Fails to Plead a Strong Inference of Scienter ..... 12

3. Courts Addressing Similar Situations Have Not Hesitated to Dismiss Similarly Insufficient Allegations of Fraud ..... 12

B. Plaintiff's Complaint Fails to State a Claim for Unjust Enrichment ..... 15

C. Plaintiff's Claims are Time-Barred ..... 16

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

Page

CASES

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) ....................12

*Allman v. UMG Recordings*,
530 F. Supp. 2d 602 (S.D.N.Y. 2008)....................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 6

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,
679 F. Supp. 2d 474 (S.D.N.Y. 2010)....................10

*Banco Espirito Santo de Investimento, S.A., v. Citibank, N.A.*,
2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 6

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008)....................6

*Bilodeau v. McAfee, Inc.*,
2013 WL 3200658 (N.D. Cal. June 24, 2013) ....................12, 13, 14, 15

*Chase Invs., Ltd. v. Kent*,
256 A.D.2d 298, 681 N.Y.S. 2d 319 (2d Dep't 1998) ....................11

*City of New York v. Cyco.net, Inc.*,
383 F. Supp. 2d 526 (S.D.N.Y. 2005)....................7, 8

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
70 N.Y.2d 382 (1987) ....................15

*Codell Constr. Co. v. Commonwealth*,
566 S.W.2d 161 (Ky. Ct. App. 1977) ....................15

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)....................12

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
400 F. App'x 611 (2d Cir. 2010) ....................15

*Furman v. Cirrito*,
828 F.2d 898 (2d Cir. 1987)....3, 6

*Global Energy & Mgmt., LLC v. Xethanol Corp.*,
2009 WL 464449 (S.D.N.Y. Feb. 24, 2009)....7, 9

*Grimes v. Fremont Gen. Corp.*,
933 F. Supp. 2d 584 (S.D.N.Y. 2013)....11

*Gross v. Symantec Corp.*,
2012 WL 3116158 (N.D. Cal. July 31, 2012)....12, 13, 14, 16

*Hunt v. Raymour & Flanigan*,
105 A.D.3d 1005, 963 N.Y.S.2d 722 (2d Dep't 2013)....17

*Infectious Disease Solutions, P.C. v. Synamed, LLC*,
2012 WL 1106847 (E.D.N.Y. Mar. 30, 2012)....17

*Irving Trust Co. v. La Pilar Realty, Inc.*,
56 A.D.2d 532, 391 N.Y.S.2d 131 (1st Dep't 1977)....11

*Jacobs v. Lewis*,
261 A.D.2d 127, 689 N.Y.S.2d 468 (1st Dep't 1999)....10

*James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*,
941 F. Supp. 2d 807 (E.D. Ky. 2013)....7

*John J. Kassner & Co. v. City of New York*,
46 N.Y.2d 544 (1979)....17

*Johnson v. Calvert Fire Ins. Co.*,
298 Ky. 669 (1944)....17

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
478 F. App'x 679 (2d Cir. 2012)....7, 9

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)....7, 12

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011)....10

*Matana v. Merkin*,
2013 WL 3940825 (S.D.N.Y. July 30, 2013)....15

*MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*,
32 Misc. 3d 758, 927 N.Y.S.2d 517 (Sup. Ct. 2011)....6

*Mills v. Everest Reins. Co.*,
410 F. Supp. 2d 243 (S.D.N.Y. 2006)....................3

*Moore v. Microsoft Corp.*,
293 A.D.2d 587, 741 N.Y.S.2d 91 (2d Dep't 2002)....................16

*Munday v. Mayfair Diagnostic Lab.*,
831 S.W.2d 912 (Ky. 1992)....................17

*Phila. Parking Auth. v. Fed. Ins. Co.*,
385 F. Supp. 2d 280 (S.D.N.Y. 2005)....................6

*Rodriguez v. It's Just Lunch Int'l*,
2009 WL 399728 (S.D.N.Y. Feb. 17, 2009), *adopted by* 2009 WL 666435 (S.D.N.Y. Mar. 12, 2009)....................7

*Samiento v. World Yacht Inc.*,
10 N.Y.3d 70 (2008)....................15

*Serrano v. Cablevision Sys. Corp.*,
863 F. Supp. 2d 157 (E.D.N.Y. 2012)....................16

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir.1994)....................12

*Smith v. Meyers (In re Schwartz & Meyers)*,
130 B.R. 416 (Bankr. S.D.N.Y. 1991)....................11

*Worley v. Avanquest N. Am., Inc.*,
2013 WL 450388 (N.D. Cal. Feb. 5, 2013)....................9, 12, 14

**OTHER AUTHORITIES**

N.Y. C.P.L.R. § 201....................16

Federal Rule of Civil Procedure 8(a)(2)....................6

Federal Rule of Civil Procedure 9(b).................... *passim*

Federal Rule of Civil Procedure 12(b)(6)....................1, 5

iYogi, Inc. ("iYogi") submits this memorandum of law in support of its motion to dismiss plaintiff Janet Burton's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

iYogi provides technical support services to its customers, including services available via telephone and remote computer connections. Plaintiff was an iYogi customer who contacted iYogi in September 2012 after, *according to Plaintiff*, her computer was "malfunctioning." After an initial consultation, in which an iYogi representative described Plaintiff's computer as "damaged" and "in need of repair," Plaintiff purchased from iYogi a service plan and accompanying software. Plaintiff has now sued iYogi alleging that she was fraudulently induced to enter into the contract and that iYogi was thereby unjustly enriched. Her allegations, however, support neither cause of action.

Plaintiff's fraudulent inducement cause of action is based upon her allegation that she agreed to purchase her service plan and software as a consequence of sales practices that created "a strong cocktail of fraud." However, Plaintiff's colorful characterizations do not disguise the absence in her complaint of actionable misrepresentations by iYogi representatives. Plaintiff claims that iYogi's representatives told her that her computer was "in need of repair" and "at serious risk," but she admits that she called iYogi to "fix her computer" because it was "malfunctioning." Similarly, Plaintiff complains that iYogi told her that her computer was "damaged . . . and would likely crash," even though she concedes that the problem with her computer was that it was "running slowly, freezing and locking up." Plaintiff's allegations of alleged misrepresentations by iYogi are not only contradicted by her own admissions, they are at best statements of opinion that are not actionable as fraud. And given Plaintiff's admissions regarding the "poorly performing" computer that gave her reason to contact iYogi,

her allegations regarding iYogi's alleged responses to her request for help cannot support the strong inference of scienter necessary to support a fraud claim.

Plaintiff includes in her complaint some extended descriptions of what she alleges to be general business practices by iYogi aimed at convincing potential customers that their computers require technical assistance without regard for whether problems actually exist. Even assuming those general accusations to be true, they are not allegations relevant to Plaintiff's experience or her claim for fraud. She admits that she contacted iYogi and sought assistance with a malfunctioning computer. (Compl. ¶¶ 43-56.) The alleged experiences of unnamed others who may have contacted iYogi about other problems relating to other computer equipment cannot remedy Plaintiff's failure to plead any actionable misrepresentations made to her.

In her second cause of action, Plaintiff alleges that iYogi was unjustly enriched when Plaintiff agreed to purchase its services and software. That claim, however, fails for the straightforward reason that Plaintiff had a contract with iYogi. The existence of a contract precludes Plaintiff's quasi-contractual unjust enrichment claim. That cause of action should be dismissed for that reason alone.

Finally, Plaintiff's complaint is untimely. Plaintiff's contract with iYogi provided that she would bring any cause of action "within one (1) year after the cause of action arose or it shall be forever waived and barred." Plaintiff alleges that she entered into her contract with iYogi on September 16, 2012, yet she initiated this action on September 30, 2013. Because that is more than one year after she claims iYogi fraudulently induced her to enter into the contract that allegedly unjustly enriched iYogi, her claim is time-barred.

For these reasons, the Court should entirely dismiss Plaintiff's complaint in its entirety and with prejudice.

## STATEMENT OF FACTS[1]

### A. The Parties

Plaintiff Janet Burton is an individual and a citizen of the Commonwealth of Kentucky. (Compl. ¶ 8.)[2] Defendant iYogi, Inc. is a New York corporation with its principal place of business in New York. (*Id.* ¶ 9.) iYogi is an independent provider of third-party technical support that provides services to consumers over the telephone and via remote computer connections. (*Id.* ¶¶ 1, 3, and Figure 3.)

### B. Plaintiff's Allegations Regarding Her Experience with iYogi

#### 1. Plaintiff Contacted iYogi After Having Problems with Her Computer and Seeking Technical Support

On September 16, 2012, Plaintiff sought technical support for a "poorly performing" computer she owned that was manufactured by Hewlett Packard. (*Id.* ¶ 43.) According to plaintiff, her computer had been "running slowly, freezing and locking-up." (*Id.*) She searched the Internet for "HP tech support" and found a sponsored iYogi advertisement. (*Id.* ¶¶ 43-44.) She followed a computer link from that advertisement to a website operated by iYogi and containing a toll-free iYogi telephone number. (*Id.* ¶¶ 45-46.) The website identified iYogi as "an independent service provider of remote tech support for third party products." (*Id.* at Figure 14.) Based upon her reading of the website, Plaintiff understood that she would be able to

---

[1] iYogi accepts the facts in Plaintiff's complaint solely for purposes of this motion to dismiss. To the extent that Plaintiff refers to documents that are integral to the causes of action in her pleading, the Court may consider those documents. *See Furman v. Cirrito*, 828 F.2d 898, 900 (2d Cir. 1987) (noting that it was appropriate to refer to a partnership agreement and contract of sale on a motion to dismiss, as both documents were "integral parts" of the plaintiff's claim); *see also Mills v. Everest Reins. Co.*, 410 F. Supp. 2d 243, 247 (S.D.N.Y. 2006) (noting the "well-established" rule that a court may consider on a motion to dismiss documents that are "integral" to the complaint) (internal quotation marks and citation omitted).

[2] The documents cited herein are attached to the accompanying Declaration of Paul Bartholomew Green, dated Dec. 16, 2013 ("Green Decl.").

obtain technical support services for her malfunctioning computer by calling that telephone number. (*Id.* ¶¶ 45-47.)

Plaintiff telephoned the number on the iYogi website for the purpose of finding "a solution to fix her computer." (*Id.* ¶ 47.) She spoke with an iYogi representative, explained to him her computer problems, and asked if iYogi could help. (*Id.* ¶ 48.) Plaintiff remembers the iYogi representative confirming that iYogi could help fix her computer and directing her to a website from which she downloaded software that allowed the iYogi representative to remotely access her computer. (*Id.*) After establishing a remote connection and navigating through files on Plaintiff's computer, the iYogi representative identified various computer files and stated that they were contributing to Plaintiff's computer's problems. (*Id.* ¶ 49.)

The iYogi representative with whom plaintiff spoke then directed Plaintiff to download iYogi's diagnostic software so that the representative could scan her computer to identify other problems. (*Id.* ¶ 50.) According to Plaintiff, she downloaded the software in reliance upon iYogi's representations about the software's functionality, and she believed that the software would scan her computer and report harmful errors. (*Id.*) Plaintiff recalls that, after the scan of her computer was complete, the software displayed on the screen a graphical depiction indicating that her computer possessed a large amount of "junk files" and "Registry errors," and that the computer's "System State" was "Critical." (*Id.* ¶ 51.)

Plaintiff remembers the iYogi representative telling her that her computer was at serious risk, damaged, in need of repair, and would likely crash if she did not purchase iYogi services to fix her computer. (*Id.* ¶ 52.) Plaintiff agreed to purchase a one-year "iYogi Gold Subscription" for $99.99. (*Id.* ¶ 54.)

**2. Plaintiff's Contract with iYogi**

Plaintiff purchased iYogi services and software on or about September 16, 2012. (*Id.*) When she downloaded the "Support Dock" software used during her remote connection with an iYogi representative, Plaintiff acknowledged and agreed to iYogi's then-current Terms of Use. (Declaration of Vishal Dhar, dated Dec. 16, 2013 ("Dhar Decl.") ¶¶ 9, 11.) Those Terms of Use were then part of an email sent to Plaintiff confirming her purchase of the service plan and accompanying software. (Dhar Decl. ¶¶ 12-13 and Ex. B (Email from iYogi to Plaintiff).) Among the Terms of Use was a provision stating that "Any cause of action by you must be commenced within one (1) year after the cause of action arose or it shall be forever waived and barred." (Dhar Decl. Ex. A (iYogi's Terms of Use).)

**C. Procedural History**

Plaintiff initiated this action with a complaint filed on September 30, 2013. (Compl.). In her complaint, Plaintiff asserts claims on her own behalf. (*Id.* ¶ 57.) She also purports to represent a class of others similarly situated with claims against iYogi. (*Id.*) The action has been designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York, (Dkt. No. 2), and this motion to dismiss by iYogi is a timely filed response to Plaintiff's complaint.

## LEGAL ARGUMENT: PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a complaint must plead facts that show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. The

complaint must "allow[ ] the court to draw the reasonable inference"—not simply a speculative one—"that the defendant is liable for the misconduct alleged." *Id.* Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—'but it has not show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). It is not sufficient for a plaintiff to allege facts that are "'merely consistent with' a defendant's liability," *Ashcroft*, 556 U.S. at 678 (citation omitted), because "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

In resolving a motion to dismiss, the Court may consider not only the "facts stated on the face of the complaint," but also "documents that" plaintiff "either possessed or knew about and that are integral to the complaint." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 200 (S.D.N.Y. 2008) (internal quotation marks and citation omitted) (considering contracts not attached to the complaint in deciding a motion to dismiss); *see also Furman*, 828 F.2d at 900 (2d Cir. 1987) (affirming dismissal of Racketeer Influenced and Corrupt Organizations Act (RICO) claim based on mail fraud and noting that it was appropriate to refer to a partnership agreement and contract of sale on a motion to dismiss, as both documents were "integral parts" of the plaintiff's claim). The "Court is not prohibited from examining all extrinsic documents." *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 284 (S.D.N.Y. 2005) (J. Batts) (citing cases) (granting motion to dismiss complaint).

**A. Plaintiff's Complaint Fails to State a Claim for Fraudulent Inducement**

To state a cause of action for fraudulent inducement under New York law,[3] Plaintiff would have to adequately plead that: (i) iYogi made a representation(s) of material fact; (2) which iYogi knew to be false at the time it was made; (3) that the representation was made with the intent of inducing Plaintiff to rely; (4) that Plaintiff justifiably relied upon the representation; (5) and was injured. *See MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*, 32 Misc. 3d 758, 773, 777, 927 N.Y.S.2d 517, 530, 533 (Sup. Ct. 2011) (dismissing plaintiff's fraudulent inducement claim for several reasons, including that "the alleged misrepresentations were not material or amounted to nonactionable opinions of value or future expectations"); *see also Global Energy & Mgmt., LLC v. Xethanol Corp.*, 2009 WL 464449, at *2 (S.D.N.Y. Feb. 24, 2009) (dismissing plaintiff's fraudulent inducement claim); *accord James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 821 (E.D. Ky. 2013) (applying Kentucky law).

Under Federal Rule of Civil Procedure 9(b), Plaintiff is additionally required to meet a heightened pleading standard for fraud. *See* Fed. R. Civ. P. 9(b). Under that rule, Plaintiff is obligated to state with particularity: (1) the statements (or omissions) that she contends were fraudulent, (2) the speaker of the alleged misrepresentations, (3) where and when the statements (or omissions) were made, and (4) the reasons why the statements (or omissions) were allegedly fraudulent. *See Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012) (internal citation omitted) (affirming dismissal of claims for fraud and unjust enrichment); *see also City of New York v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 539 (S.D.N.Y.

[3] iYogi moves to dismiss Plaintiff's complaint under New York law. Although Plaintiff alleges that she resides in Kentucky, she does not allege in the complaint her location at the time of the relevant events. Moreover, iYogi is unaware of any conflict between New York and Kentucky law regarding the matters relevant to this motion that would provide reason for undertaking a choice of law analysis.

2005) (J. Batts) ("Complaint must specify the time, place, speaker, and content of the alleged misrepresentation."). Under the Second Circuit's interpretation of Rule 9(b), Plaintiff's complaint could only survive this motion to dismiss if it had contained facts giving rise to a "strong inference" of fraudulent intent by iYogi. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006); *City of New York*, 383 F. Supp. 2d at 539 (J. Batts) (dismissing for failure to state a common law fraud claim); *Rodriguez v. It's Just Lunch Int'l*, 2009 WL 399728, at *5 (S.D.N.Y. Feb. 17, 2009) (Report and Recommendation to dismiss plaintiff-customers' fraudulent inducement and misrepresentation claims "because they lack the requisite degree of specificity demanded by Fed. R. Civ. P. 9(b)"), *adopted by* 2009 WL 666435 (S.D.N.Y. Mar. 12, 2009). Plaintiff's fraudulent inducement cause of action fails to meet these standards.

**1. The Complaint Fails to Identify a False Representation of Material Fact**

Plaintiff's complaint does not allege that iYogi made any false representation of material fact upon which she relied. Plaintiff admits that she contacted iYogi because her computer was already "malfunctioning." (Compl. ¶ 46.) After listening to Plaintiff's descriptions of her problems and running a diagnostic scan on her computer, iYogi's representative confirmed Plaintiff's own evaluation of the condition of her computer. (*Id.* ¶¶ 48-52.) As the following chart demonstrates, the purported statements upon which Plaintiff tries to craft her fraudulent inducement claim against iYogi are substantially the same as statements Plaintiff identifies as accurately describing the state of her machine:

| **Plaintiff's Admissions** | **iYogi's Alleged Misrepresentations** |
|---|---|
| her computer was "running slowly, freezing and locking up" (Compl. ¶ 43) | her computer was "damaged . . . [and] would likely crash" (*Id.* ¶ 52) |
| her computer was "poorly performing" (Compl. ¶ 43) | her computer's "'System State' was 'Critical'" (*Id.* ¶ 51) |

| | |
|---|---|
| her computer was "malfunctioning" (Compl. ¶ 46) | her computer was "at serious risk" (*Id.* ¶ 52) |
| she needed to "fix her computer" (Compl. ¶ 47) | her computer was "in need of repair" (*Id.* ¶ 52) |
| "Burton explained her computer troubles" (Compl. ¶ 48) | iYogi stated "various files . . . were contributing to the computer's problems" (*Id.* ¶ 49) |

Based on Plaintiff's own allegations, the alleged statements by iYogi's representative cannot support a fraudulent inducement claim because they closely match Plaintiff's own assessments regarding the condition of her computer.

To the extent that Plaintiff would claim that the statements by iYogi's representative were false, Plaintiff is required to explain with particularity how they were false *See Landesbank Baden-Wurttemberg*, 478 F. App'x at 681. Plaintiff nowhere identifies how any of iYogi's alleged statements were false, an unsurprising fact given the symmetry between iYogi's alleged statements and her own descriptions of the malfunctioning computer that was her reason for calling iYogi. At most, Plaintiff contends that iYogi conducted "no credible assessment of [her] computer," (Compl. ¶ 53), but Plaintiff offers no basis for that allegation beyond a speculative suspicion that no credible assessment was done. Such speculation is insufficient to support a fraud claim. *See Worley v. Avanquest N. Am., Inc.*, 2013 WL 450388, at *3 (N.D. Cal. Feb. 5, 2013) (dismissing a similar complaint brought by *Plaintiff Burton's counsel* in California because plaintiff "must provide more specificity regarding the falsity of the exact representations he relie[d] on to support this [fraudulent inducement] claim"); *see also Global Energy & Mgmt.*, 2009 WL 464449, at *2-3 ("[P]laintiff's allegations still fail to satisfy Rule 9(b) because the complaint does not set forth *how* those statements are

fraudulent. . . . Given that a central purpose of Rule 9(b) is to 'provide detailed notice of the fraud claim to the defending party,' plaintiff's blanket allegation of falsity here is simply too conclusory. [Defendant] is entitled to know what statements plaintiff claims are untrue, and in what ways plaintiff alleges those statements are untrue.") (citations omitted and emphasis in original).

To the extent that Plaintiff might point to the narrow differences between her own descriptions of her computer's problems and the statements the iYogi representative made regarding those same problems after connecting remotely to her computer, those differences could only be construed, at best, as opinions. Those kinds of statements are not material misrepresentations or sufficient to support a fraud claim. *See Jacobs v. Lewis*, 261 A.D.2d 127, 127-28, 689 N.Y.S.2d 468, 468 (1st Dep't 1999) (affirming dismissal of plaintiff's fraud claim because defendant's alleged misrepresentations regarding her expertise and that of another contractor "amounted to no more than opinions and puffery or ultimately unfulfilled promises"); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (dismissing fraud claims, in part, because "when defendants allegedly promised 'top of the line' equipment with 'topnotch output fit for a 5 star customers [sic],' they were making a 'statement of opinion' or 'commercial puffery,' which is not actionable in New York"); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179, 919 N.Y.S.2d 465, 469 (2011) (citation omitted) (dismissing fraudulent misrepresentation claim, in part, because defendant's "letter regarding the painting's value constituted [a] nonactionable opinion that provided no basis for a fraud claim").

To the extent that Plaintiff nevertheless continues to complain about the alleged statements by iYogi's representative that her computer "would likely crash," (Compl. ¶ 52), that "entries [in the computer's registry] were causing the computer's performance issues," (*Id.* ¶

49), and that the "computer possessed a large amount of 'junk files' and 'Registry errors'," (*Id.* ¶ 51), Plaintiff nowhere in her complaint contends that those statements were either false or statements of material fact. Those statements also would only be expressions of opinion, including an opinion regarding how Plaintiff's computer would perform in the future. Plaintiff also never alleges that iYogi's representative did not actually hold those opinions. And such statements could not sustain her fraud claim because "opinions or predictions of something which is expected to occur in the future . . . cannot sustain a claim for fraud." *Chase Invs., Ltd. v. Kent*, 256 A.D.2d 298, 299, 681 N.Y.S. 2d 319, 320 (2d Dep't 1998) (quotations and citations omitted) (overturning lower court's decision to grant leave to amend complaint so as to assert a cause of action for fraud). "To be actionable, the representation must be one of existing fact and not merely an expression of opinion, expectation or declaration of intention." *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 423 (Bankr. S.D.N.Y. 1991) (citing cases). "It is only when the declarant does not hold these opinions or utters them with reckless indifference for their truth that the requisite fraud can be found." *Id.*

For these reasons, Plaintiff's complaint fails to allege with the requisite particularity an actionable misrepresentation made by iYogi. *See Irving Trust Co. v. La Pilar Realty, Inc.*, 56 A.D.2d 532, 532, 391 N.Y.S.2d 131, 132 (1st Dep't 1977) (reversing trial court and granting summary judgment motion dismissing fraudulent inducement claim because "[n]o misrepresentations of existing facts are claimed to have been made").[4] Having failed to identify

[4] Separately, Plaintiff's complaint contains general allegations about supposed iYogi business practices, (Compl. ¶¶ 17-42 (Sections II and III)), but those allegations provide no support for plaintiff's fraud claim where they do not describe statements allegedly made to the Plaintiff. *See Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 606 (S.D.N.Y. 2013) (dismissing plaintiffs' fraud claims, in part because even if defendant "misrepresented Plaintiffs' income . . . this allegation does not substantiate a fraud claim, because it describes a misrepresentation which was made to [another defendant], not *to Plaintiffs*") (emphasis in original).

an actionable misrepresentation, plaintiff also fails to plead the required elements of materiality and justifiable reliance.

**2. The Complaint Fails to Plead a Strong Inference of Scienter**

To state a claim for fraud in the Second Circuit, Plaintiffs must plead facts giving rise to a "strong inference of fraudulent intent" by iYogi. *Lerner*, 459 F.3d at 290-91 (to plead fraud, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent") (quoting *Acito v. IMCERA Grp., Inc*., 47 F.3d 47, 52 (2d Cir. 1995)); *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (to plead scienter adequately, the plaintiff must allege "facts that give rise to a strong inference of fraudulent intent") (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)). Having failed to plead with particularity why the statements iYogi's representative allegedly made to Plaintiff were false, her complaint also fails to state with particularity circumstances giving rise to a strong inference that iYogi intended to defraud her.

**3. Courts Addressing Similar Situations Have Not Hesitated to Dismiss Similarly Insufficient Allegations of Fraud**

Courts have recently dismissed similar cases against computer service and software providers where plaintiffs complained about allegedly fraudulent sales practices without meeting the Rule 9(b) pleading requirements. *See, e.g., Bilodeau v. McAfee, Inc.*, 2013 WL 3200658, at *10 (N.D. Cal. June 24, 2013); *Worley*, 2013 WL 450388, at *2-3; *Gross v. Symantec Corp.*, 2012 WL 3116158, at *5 (N.D. Cal. July 31, 2012).

In *Bilodeau v. McAfee, Inc.*, for example, the court dismissed the plaintiff's fraud claims for failing to adequately specify defendant's alleged misrepresentations. *See* 2013 WL 3200658, at *1. Like Plaintiff's allegations in this case against iYogi, the plaintiff in *Bilodeau* admitted that her "computer malfunctioned" before she ever saw the defendant's advertisements or

attempted to use the defendant's software. *Id.* at *10. The plaintiff in *Bilodeau* also alleged that the defendant fraudulently induced her into a full-price version of its software by misrepresenting that the program "would accurately identify, report and repair a variety of computer errors and other problems, [and] enhance the performance, speed, and security of her computer." *Id.* at *1. Specifically, the plaintiff in *Bilodeau* alleged—much like Plaintiff in this case—that the defendant induced her to purchase its software after an initial free trial period by having software that falsely reported that her computer "was in need of repair." *Id.* The *Bilodeau* court granted defendant's motion to dismiss on grounds that, even if the defendant's software overstated the existence of errors on the plaintiff's computer, the complaint failed to link any deficiencies in the software to the plaintiff's "personal experience" with the software program because she conceded that her computer was already malfunctioning. *Id.* at *9-10. The *Bilodeau* court concluded that "neither Plaintiff's allegations regarding the alleged representations on McAfee's website, nor Plaintiff's allegations of [the software's] alleged false reporting have satisfied the particularity requirement of Rule 9(b)" *Id.* at 10.[5]

In another case, *Gross v. Symantec*, the plaintiff alleged that the defendant (a provider of anti-virus and other security-related software) misrepresented the effectiveness of its product and

---

[5] Plaintiff's allegations in this case are also similar to other facts of the *Bilodeau* case. In her case against iYogi, Plaintiff contends that some unnamed person engaged iYogi to run its diagnostics software on a "brand new test computer," and the iYogi software analyzed the computer as requiring attention and having a "System State" that was "Critical." (Compl. ¶ 29.) In *Bilodeau*, the plaintiff "through her attorneys, . . . engaged a computer forensics expert, who performed tests on 'a brand new virtual computer system' and found that [defendant's software] 'still reported that numerous errors existed on the system.'" *Bilodeau*, 2013 WL 3200658, at *2. The plaintiff in *Bilodeau* complained that defendant's software "invariably report[s], in a uniform manner, that hundreds of harmful computer errors exist on [any] user's PC"; therefore, she claimed that any "errors" detected by the software posed no actual risk to her computer. *Id.* The *Bilodeau* court dismissed those allegations as irrelevant to the plaintiff's fraud claim because, "even if the allegation that the software over-reports errors on new computers was sufficiently particular for the purposes of Rule 9(b), Plaintiff *fails to link* it to her personal experience with [the software]." *Id.* at *9 (emphasis added). Like the plaintiff in *Bilodeau*, Burton fails to link her experience—on an admittedly "poorly performing HP computer"—to an alleged experiment conducted without any suggestion that the separate computer was set in any way to resemble Plaintiff's admittedly malfunctioning computer. (*See* Compl. ¶ 43.)

the health—or lack thereof—of prospective consumer's computers in order to induce them to purchase its software. *See* 2012 WL 3116158, at *1. According to the plaintiff in the *Gross* case, the defendant misleadingly demonstrated its "software's supposed utility" by recommending that consumers "download a free version of the software and conduct a 'free diagnostic' scan, which purport[ed] to detect errors and other problems existing on a user's computer." *Id.* Like Ms. Burton in this case against iYogi, the plaintiff in *Gross* complained that, after the consumer "performs the free scan, the software allegedly invariably reports that there are numerous—often 'high priority'—errors and other problems on the computer" and represents that the full-price version can "'fix'" them. *Id.* The court in *Gross* held that the plaintiff's cause of action for fraud failed to satisfy Rule 9(b)'s heightened pleading requirement because the plaintiff did not identify anything the defendant "*actually said* regarding the functional capabilities of its software." *Id.* at *3 (emphasis in original). Therefore, the court dismissed all of plaintiff's fraud-based claims, including fraudulent inducement, on grounds that the plaintiff's allegations specific to the individual plaintiff were "too vague to be actionable in federal court." *Id.* at *5.

Another case recognizing the insufficiency of similar fraud allegations against another provider of technical support is *Worley v. Avanquest North America, Inc.*, 2013 WL 450388. In that case, the plaintiff contended that the defendant fraudulently induced him to purchase its software "as a result of false and misleading statements about what the software would but in fact could not or did not do." *Id*. at *1. Like the plaintiff in this action, the plaintiff alleged that "the software overstate[d] both the amount and severity of errors [on consumer's computers] . . . in order to convince consumers that the product [was] functioning as advertised." *Id.* Again, the court recognized the insufficiency of such allegations and granted the defendant's motion to dismiss. Even though the plaintiff alleged specific representations made by the defendant, the

court saw that "the Complaint is devoid of any specifics . . . regarding *the falsity* of the exact representations [plaintiff] relies on to support [his] claim." *Id.* at *3 (emphasis added).

Plaintiff's fraud claim in this case suffers from the same kinds of pleading deficiencies the courts recognized in *Bilodeau*, *Gross*, and *Worley*. Plaintiff has failed to specifically allege any misrepresentations made by iYogi regarding the effectiveness of its diagnostic software, including the substance or timing of any such statements. Additionally, even assuming that Plaintiff satisfied this minimal requirement, she has not alleged which representations were false. Plaintiff's admission that her computer was malfunctioning prior to contacting iYogi undermines any contention that iYogi's software and technical support staff falsely identified errors in her system.

**B. Plaintiff's Complaint Fails to State a Claim for Unjust Enrichment**

Plaintiff's claim for unjust enrichment fails because there is a valid and enforceable contract covering the subject matter of the claim. *See Banco Espirito Santo de Investimento, S.A., v. Citibank, N.A.*, 2003 WL 23018888, at *17-18 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004); *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) ("Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists"); *accord Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) ("The doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed."). The "existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (affirming dismissal of unjust enrichment claim); *Matana v. Merkin*, 2013 WL 3940825, at *15 (S.D.N.Y. July 30, 2013) (plaintiff's unjust enrichment claim precluded because contract governed subject matter of complaint); *Samiento v.*

*World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008) (trial court properly dismissed plaintiffs' cause of action for unjust enrichment because "plaintiffs have an adequate remedy at law").[6]

A valid, enforceable "click-wrap" contract, formed when an internet user indicates that he or she has reviewed and agreed to terms of service by clicking on a link marked "agree," precludes a claim for unjust enrichment. *See Moore v. Microsoft Corp.*, 293 A.D.2d 587, 588, 741 N.Y.S.2d 91, 92 (2d Dep't 2002) (affirming dismissal of unjust enrichment claim brought by plaintiff who clicked on an "I agree" icon to accept a license agreement before downloading defendant's software); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 168 (E.D.N.Y. 2012) (dismissing unjust enrichment claim with prejudice).

Here, Plaintiff concedes that she entered into a contract with iYogi. (Compl. ¶ 54 ("Burton agreed to purchase a one-year 'iYogi Gold Subscription' for $99.99.").) Therefore, Plaintiff's unjust enrichment claim must be dismissed.

**C. Plaintiff's Claims are Time-Barred**

When plaintiff contacted iYogi, downloaded the "Support Dock" software and purchased a multi-session service plan with accompanying software, she confirmed her agreement with the iYogi Terms of Use. (Dhar Decl. ¶¶ 7-11.) Among the Terms of Use was a provision stating that "Any cause of action by you must be commenced within one (1) year after the cause of action arose or it shall be forever waived and barred." (Dhar Decl. Ex. A.) That time limitation bars her claims in this action.

New York law recognizes the enforceability of contractual limitations provisions, including limitations to periods of one-year. *See* N.Y. C.P.L.R. §201 ("An action . . . must be

---

[6] The court in *Gross v. Symantec Corp.* also dismissed the plaintiff's unjust enrichment claim "because an express contract existed between [the parties]." 2012 WL 3116158, at *13.

commenced within the time specified in this article unless . . . a shorter time is prescribed by written agreement."); *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 551 (1979) (Contractual provision "which modifies the [applicable] Statute of Limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable provided it is in writing."); *Infectious Disease Solutions, P.C. v. Synamed, LLC*, 2012 WL 1106847, at *8, *11 (E.D.N.Y. Mar. 30, 2012) (enforcing one-year contractual limitations provision and dismissing, as time barred, plaintiff's contract claims and related fraud claims); *Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 606-07 (S.D.N.Y. 2008) (citing cases) (plaintiff's breach of contract claims time barred by contractual limitations provision); *Hunt v. Raymour & Flanigan*, 105 A.D.3d 1005, 1006, 963 N.Y.S.2d 722, 724 (2d Dep't 2013) (plaintiff's claims time barred by operation of contractual limitations provision); *accord Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992) ("Parties are at liberty to contract for a limitation period less than the period fixed by statute."); *Johnson v. Calvert Fire Ins. Co.*, 298 Ky. 669, 672-73 (1944) (enforcing, as reasonable, the parties' contractually provided one-year limitations period).

Plaintiff agreed on September 16, 2012 that she would commence any cause of action within one year after it arose, or that such claim would be "forever waived and barred." (Dhar Decl. Ex. A.) Her claims of fraudulent inducement and unjust enrichment, if they were supported by facts or law, would have arisen on that date when Plaintiff purchased iYogi's services. Her complaint, however, was filed on September 30, 2013, more than one year after any claim arose and beyond the one-year limitation period to which she agreed. Her claims, therefore, should be dismissed for the additional reason that they are time barred.

## CONCLUSION

For the foregoing reasons, iYogi respectfully submits that Plaintiff's complaint should be dismissed in its entirety and with prejudice.

Dated: New York, New York
December 16, 2013

Respectfully submitted,

*/s/ Paul Bartholomew Green*

Jayant W. Tambe
Thomas E. Lynch
Paul Bartholomew Green
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone: (212) 326-3939

*Attorneys for Defendant iYogi, Inc.*

**DECLARATION OF SERVICE**

Paul Bartholomew Green, an attorney admitted to practice before the bar of this Court, declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that a true and correct copy of the accompanying iYogi, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) will be served via the Court's ECF electronic filing system simultaneously with the filing of this declaration, and that an additional copy will be sent to the parties listed below via UPS overnight mail.

Lee A. Weiss
Berns Weiss LLP
585 Stewart Avenue, Suite L-20
Garden City, New York 11530

Rafey S. Balabanian
Benjamin H. Richman
Chandler R. Givens
David I. Mindell
Edelson LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654

Dated: December 16, 2013
New York, New York

*/s/ Paul Bartholomew Green*
Paul Bartholomew Green