UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANET BURTON, individually and on behalf of all other similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>IYOGI, INC.,<br><br>    Defendant. | No. 13-CV-06926 (DAB)<br><br>**ECF Case** |

**IYOGI, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone: (212) 326-3939

*Attorneys for Defendant iYogi, Inc.*

## **TABLE OF CONTENTS**

Page

REPLY ARGUMENT ................................................................................................................. 1

    A.    Plaintiff Identifies No Statement That Could
Support a Fraudulent Inducement Claim ................................................................ 1

        1.    Plaintiff Abandons Most Alleged iYogi
Statements Set Forth in Her Complaint ...................................................... 1

        2.    Plaintiff Never Disputes the Existence of
"Junk Files" and "Registry Errors" on Her Computer ................................ 2

        3.    Plaintiff's Contention That iYogi Claimed That the
Purchase of Its Services to Repair and Protect
Her Computer Are Puffery .......................................................................... 5

        4.    Plaintiff's Statements Regarding iYogi
Advertising Cannot Support a Fraud Claim ............................................... 6

    B.    Plaintiff Affirmatively Pleads Her Contract
with iYogi; That Alone Precludes Her
Unjust Enrichment Claim ........................................................................................ 7

    C.    Plaintiff's Claims Are Untimely ............................................................................. 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................................................8

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.,*
    679 F. Supp. 2d 474 (S.D.N.Y. 2010)......................................................................................3, 6

*Berman v. Sugo LLC,*
    580 F. Supp. 2d 191 (S.D.N.Y. 2008)..........................................................................................9

*Bilodeau v. McAfee, Inc.,*
    2013 WL 3200658 (N.D. Cal. June 24, 2013)........................................................................2, 5

*Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Solutions, LLC,*
    2009 WL 5179535 (S.D.N.Y. Dec. 29, 2009) .............................................................................8

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.,*
    400 F. App'x 611 (2d Cir. 2010) .................................................................................................8

*Furman v. Cirrito,*
    828 F.2d 898 (2d Cir. 1987).........................................................................................................9

*Global Energy & Mgmt., LLC v. Xethanol Corp.,*
    2009 WL 464449 (S.D.N.Y. Feb. 24, 2009)................................................................................3

*Infectious Disease Solutions, P.C. v. Synamed, LLC,*
    2012 WL 1106847 (E.D.N.Y. Mar. 30, 2012).............................................................................9

*Jacobs v. Lewis,*
    261 A.D.2d 127, 689 N.Y.S.2d 468 (1st Dep't 1999) .............................................................3, 6

*Lazaro v. Good Samaritan Hosp.,*
    54 F. Supp. 2d 180 (S.D.N.Y. 1999)..........................................................................................10

*Mandarin Trading Ltd. v. Wildenstein,*
    16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011) ..................................................................................3

*Matana v. Merkin,*
    2013 WL 3940825 (S.D.N.Y. July 30, 2013) .............................................................................8

*Mills v. Everest Reins. Co.,*
    410 F. Supp. 2d 243 (S.D.N.Y. 2006).........................................................................................9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70 (2008) ...................................................................................................8

**STATUTES AND RULES**

Fed. R. Civ. P. 8(d)(3) ..........................................................................................................8

Fed. R. Civ. P. 9(b) ..............................................................................................................2

**REPLY ARGUMENT**

iYogi, Inc. ("iYogi") submits this reply memorandum of law in further support of its motion to dismiss plaintiff Janet Burton's complaint.

In opposition to iYogi's motion, Plaintiff attempts to avoid the fact that her own alleged experience with iYogi provides no basis for a claim. Instead, she repeatedly references general allegations about iYogi's supposed general business practices and the potential claims of others she would seek to represent as a class. iYogi's motion to dismiss challenges the sufficiency of Plaintiff's allegations as to her own experience, not the hypothetical experiences of unknown and unnamed others; it is upon those facts that Plaintiff's complaint should be dismissed.

**A. Plaintiff Identifies No Statement That Could Support a Fraudulent Inducement Claim**

**1. Plaintiff Abandons Most Alleged iYogi Statements Set Forth in Her Complaint**

iYogi identified in its opening memorandum a series of statements that Plaintiff claimed iYogi representatives made to her and upon which she attempted to craft a fraudulent inducement claim, including that her computer was "damaged . . . [and] would likely crash," that "various files . . . were contributing to the computer's problems," and that her computer was "at serious risk" and "in need of repair." (*See* iYogi's Mem. of Law, dated Dec. 16, 2013 [Docket No. 20] ("iYogi Mem."), at 8-11 (citing Pl.'s Compl., dated Sept. 30, 2013 [Docket No. 1] ("Compl."), ¶¶ 49, 51-52).) As iYogi demonstrated in its opening, Plaintiff cannot plausibly claim those alleged iYogi statements to be false when they are consistent with her own admissions that her computer was "running slowly, freezing and locking up," was "poorly performing," had "troubles," and was "malfunctioning," or that she needed a solution to "fix her computer." (*See* iYogi Mem. at 8-9 (with chart comparing Plaintiff's allegations with her admissions); *see also* Compl. ¶¶ 43, 46-48.) Without a false representation of material fact made by iYogi, Plaintiff cannot plead the elements of a fraudulent misrepresentation claim.

In her opposition, Plaintiff ignores the consistency between iYogi's alleged statements and her own assessments of her computer.  Instead, Plaintiff conveniently omits from her legal argument the alleged statements by iYogi upon which the complaint attempts to state a fraud claim.[1]  (Pl.'s Opp'n Mem., dated Jan. 16, 2014 [Docket No. 25] ("Opp'n Mem."), at 8-14.) In doing so, Plaintiff all but concedes that those alleged statements could never be material misrepresentations of fact given her own admissions about the condition of her computer, let alone any type of false statement upon which she could have reasonably relied.  Courts have held that claims based on such statements should be dismissed for failure to satisfy Rule 9(b).  *See, e.g., Bilodeau v. McAfee, Inc.*, 2013 WL 3200658, at *10 (N.D. Cal. June 24, 2013) ("[B]y her own admission, Plaintiff's computer malfunctioned prior to seeing [defendant]'s ad or using [defendant's service], undermining the proposition that Plaintiff's computer was error free.").

**2. Plaintiff Never Disputes the Existence of "Junk Files" and "Registry Errors" on Her Computer**

The only statements to which Plaintiff points in her memorandum as potentially satisfying Rule 9(b)'s heightened pleading requirements for her fraudulent inducement claim are that iYogi told her that "her computer possessed a large amount of 'junk files' and 'Registry errors,' that [those] items were causing her computer's 'System State' to be 'Critical', and that the purchase of iYogi's tech support services was necessary to repair those problems and protect her computer going forward."  (Opp'n Mem. at 9-10.)

Plaintiff, however, never disputes that her computer actually possessed large amounts of junk files and Registry errors, and she never claims that iYogi's identification of those types of

---

[1] Plaintiff does repeat these alleged statements within her recitation of facts, (Opp'n Mem. at 5), but she argues nowhere in her memorandum that those statements were false, and she never explains how they could be false given her own admissions about her malfunctioning computer.

files on her computer was inaccurate. (*Id.* at 5, 8-10.) She cannot assert a fraudulent misrepresentation claim on the basis of factual statements that she never alleges were false. *See Global Energy & Mgmt., LLC v. Xethanol Corp.*, 2009 WL 464449, at *2-3 (S.D.N.Y. Feb. 24, 2009) ("[P]laintiff's allegations still fail to satisfy Rule 9(b) because the complaint does not set forth *how* those statements are fraudulent. . . . [P]laintiff fails to explain in what respects the statements at issue were untrue.") (emphasis in original).

      Incapable of challenging the existence of large numbers of junk files and Registry errors on her computer during iYogi's review, Plaintiff instead disputes that those conditions should merit any type of warning and contends that it is not "credible to claim that they contribute to a 'Critical' system status." (Opp'n Mem. at 10.) As an initial matter, Plaintiff's complaint about iYogi's assessment does not challenge any statement of fact, but rather iYogi's alleged opinions regarding the effect junk files and Registry errors were having on her computer. Those kinds of opinions are not sufficient to state a fraud claim. (*See* iYogi Mem. at 10 (citing *Jacobs v. Lewis*, 261 A.D.2d 127, 127-28, 689 N.Y.S.2d 468, 468 (1st Dep't 1999), *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010), and *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179, 919 N.Y.S.2d 465, 469 (2011)).) Moreover, iYogi's alleged conclusion that Plaintiff's "System State" was "Critical" and needed to be repaired is entirely consistent with Plaintiff's own admissions that her computer was "running slowly, freezing and locking up" and "malfunctioning." (Compl. ¶¶ 43, 46, 51-52.)

      Plaintiff also never alleges that junk files and Registry errors were the only defects that iYogi identified on her computer, or that they were the only problems prompting iYogi's "Critical" conclusion. Plaintiff reprints as Figure 8 of her complaint the output from the diagnostics software she alleges iYogi used on her machine (although not the printout from an

assessment of Plaintiff's computer) identifying eleven different categories of computer system information analyzed during an iYogi diagnostic scan. (*Id.* ¶¶ 28-29, 50-51, Figure 8.) Registry Check and Junk Content are only two of eleven categories, yet Plaintiff neither addresses iYogi's assessment of her computer with respect to its System Restore, Security, Firewall, Virus Scan, Windows Update, Internet Check, Browser Check, P2P Software, and Memory Check conditions nor alleges that iYogi incorrectly assessed those conditions. (*Id.* ¶¶ 43-56.)

Plaintiff not only avoids describing iYogi's complete assessment of all the computer conditions that she admits iYogi reviewed, (*id.* ¶ 50), but she nowhere claims that iYogi's assessments of those conditions were inaccurate, (*id.* ¶¶ 43-56). Plaintiff summarily concludes that iYogi conducted "no credible assessment of [her] computer," (*id.* ¶ 53), but she nowhere claims that iYogi failed to actually scan her computer, inaccurately assessed her computer's contents, or presented her with inaccurate information about her computer, (*id.* ¶¶ 43-56). To the contrary, Plaintiff admits that iYogi "performed a diagnostic scan using" its software. (*Id.* ¶ 51.) Plaintiff's statements regarding "no credible assessment" relate to her interpretation of the assessment that she admits iYogi did perform, (*id.* ¶¶ 50-54; *see also id.* ¶¶ 31, 33), and Plaintiff nowhere claims that iYogi or its diagnostic software manufactured false data.

Plaintiff's complaints about iYogi's interpretation of her computer's characteristics are not only incomplete and deceptive descriptions of the analysis that she admits iYogi performed, but her allegations preclude her from plausibly claiming that iYogi's identification of junk files and Registry errors on her computer solely caused the "Critical" assessment about which she repeatedly complains. (Opp'n Mem. at 5, 9-11.) Even in the sample assessment of a computer (again, not Plaintiff's) with the "Critical" assessment that Plaintiff reprints as Figure 8 to her complaint, the computer is shown to have no security software installed, no active firewall,

Microsoft Windows' automatic update feature disabled, and a slow or otherwise deficient Internet connection.[2] (Compl. ¶ 29, Figure 8.) Plaintiff seeks to conceal those factors—evident on the face of the complaint itself—by simply ignoring them in both her allegations and in her opposition memorandum. Plaintiff's suggestion that junk files and Registry errors could result in a "Critical" conclusion disguises the fact that Plaintiff never expressly alleges that those problems alone actually prompted iYogi to reach the "Critical" assessment of her computer, and her implicit suggestion that they did is not plausible given the number of other factors contributing to a "Critical" assessment in the one complete assessment Plaintiff includes as part of her complaint.[3]

### 3. Plaintiff's Contention That iYogi Claimed That the Purchase of Its Services to Repair and Protect Her Computer Are Puffery

The alleged statement Plaintiff attributes to iYogi about "the purchase of iYogi's tech support services" being "necessary to repair those problems and protect her computer going

---

[2] The supposed "investigation" to which Plaintiff refers in her attempt to bolster her case provides no support to Plaintiff's effort to state a cause of action because, as courts have found, that type of investigation relates to a computer and an experience with iYogi different than Plaintiff's own. *See, e.g., Bilodeau*, 2013 WL 3200658, at *9-10 ("[E]ven if the allegation that the software over-reports errors on new computers was sufficiently particular for the purposes of Rule 9(b), Plaintiff fails to link it to her personal experience with [defendant's service]. . . . Rather, she makes the logical leap that because [defendant's service] allegedly reported false positives on a new virtual computer, the reported errors on her computer either did not exist or did not pose a risk. . . . Plaintiff does not indicate that any expert ever examined *her* computer to determine whether the reported errors were in fact false.") (emphasis in original).

[3] To reach the "Critical" assessment on their supposed "test" computer, Plaintiff's lawyers apparently installed no security software, disabled the computer's firewall settings, failed to activate the Microsoft Windows automatic update feature, and used a slow Internet connection. (Compl. ¶ 29, Figure 8.) Plaintiff neither mentions those settings in her allegations nor claims that iYogi's identification of those problems in the "test" computer was inaccurate. (*Id.* ¶¶ 28-37.) Plaintiff's suggestion that there is something improper in iYogi's recognition of problems on "*a brand new computer*," (*id.* ¶ 29 (emphasis in original)), ignores the common sense conclusion that even a new computer lacking a firewall, without security software, with Microsoft Windows updates disabled, and with a problematic Internet connection can accurately be described as having critical problems that need to be remedied.

forward," (Opp'n Mem. at 10; *see also* Compl. ¶ 54), is mere commercial puffery that is not actionable as fraud.  Plaintiff admits that her computer was "running slowly, freezing and locking up" and malfunctioning so badly that she needed someone to "fix her computer," (Compl. ¶¶ 43, 47), so she cannot plausibly contend that iYogi's alleged statements that its services and software were necessary to fix Plaintiff's problems were false representations of material fact upon which she might rely.  *See B & M Linen, Corp.*, 679 F. Supp. 2d at 482 (dismissing fraud and intentional misrepresentation claims, in part because "when defendants allegedly promised 'top of the line' equipment with 'topnotch output fit for a 5 star customers [sic],' they were making a 'statement of opinion' or 'commercial puffery,' which is not actionable in New York"); *Jacobs*, 261 A.D.2d at 127-28, 689 N.Y.S.2d at 468 (affirming dismissal of fraud claim in part because alleged misrepresentations regarding defendant's expertise and that of another contractor "amounted to no more than opinions and puffery or ultimately unfulfilled promises").  Plaintiff admits that she sought help "for her poorly performing" computer and searched the Internet for technical support.  (Compl. ¶ 43.)  There is no reasonable interpretation of iYogi's alleged statement about Plaintiff needing its services that could have led her to understand that *only* iYogi's services and software would solve her problems.

   4.  **Plaintiff's Statements Regarding iYogi Advertising Cannot Support a Fraud Claim**

   Likely recognizing the insufficiency of her other allegations regarding supposed statements by iYogi about her malfunctioning computer, Plaintiff also argues that she might meet the heightened pleading standards for a fraud claim with her references to websites that she saw when "she searched for computer tech support [and] viewed iYogi's online advertisements and marketing materials . . . in online advertisements . . . and on iYogi's websites." (Opp'n Mem. at 9; *see also id.* at 13.)  Plaintiff, however, fails to identify in either her complaint or her opposition any supposedly false statement upon which she relied.  (*Id.* at 9-10; Compl. ¶¶ 43-47.)

6

At most, Plaintiff summarily accuses iYogi of designing its advertisements "to look like an official looking 'HP' advertisement" and claims that the website to which she was directed, "unbeknownst to her, was actually owned and operated by iYogi." (Opp'n Mem. at 4 (citing Compl. ¶ 44).) But Plaintiff identifies nothing allegedly false or improper about "official looking" advertising, and her claim that she did not know iYogi owned and operated the website she viewed ignores the statements displayed on the webpage she claims to have viewed before calling iYogi *that she reprints in her complaint*:

> iYogi is an independent provider of on-demand tech support and not affiliated with any third party brand unless specified . . . .
>
> . . . .
>
> iYogi is an independent service provider of remote tech support for third party products. Any use of third party trademarks mentioned on this site, brand names, products and services is only referential and iYogi hereby disclaims any sponsorship, Affiliation or Endorsement of or by any such third party. . . .

(Compl. ¶ 45, Figure 14.)[4]

### B. Plaintiff Affirmatively Pleads Her Contract with iYogi; That Alone Precludes Her Unjust Enrichment Claim

Plaintiff unambiguously alleges in her Complaint that she had a contract with iYogi, pleading that she "agreed to purchase a one-year 'iYogi Gold Subscription' for $99.99," (Compl. ¶ 54), and that that she "purchased" and "subscrib[ed] to iYogi's technical support services," (*id.* ¶¶ 55-56). Having pleaded a contract covering the subject matter of her claim,

---

[4] Although the reproduction in Plaintiff's complaint of a page from an iYogi website as Figure 14 is too small in some copies to be read clearly, (*see, e.g.,* Decl. of P. Green, dated Dec. 16, 2013 [Docket No. 21] ("Green Decl."), at Ex. 1 [Docket No. 21-1]), iYogi has reviewed the copy of the complaint Plaintiff submitted to the Clerk of the Court for the Southern District of New York to confirm that the text of the webpage in Figure 14, while still reduced to a very small size, is accurately quoted. (*See* Pl.'s Compl., dated Sept. 30, 2013 [Docket No. 1].) The text in Plaintiff's Figure 14 is materially the same as the language on a current iYogi webpage. *See* iYogi, http://www.iyogi.net/5592813/hp-support.html (last visited Jan. 30, 2014).

7

Plaintiff is precluded from pursuing her unjust enrichment cause of action. (*See* iYogi Mem. at 15-16 (citing, among other cases, *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010), *Matana v. Merkin*, 2013 WL 3940825, at *15 (S.D.N.Y. July 30, 2013), and *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008)).)

Plaintiff argues that her unjust enrichment claim should not be dismissed because alternative pleading is generally permitted under Federal Rule of Civil Procedure 8(d)(3). (Opp'n Mem. at 14-15.) While alternative or inconsistent claims may be permissible under appropriate circumstances, alternative claims must still be plausible and supported by sufficient allegations of fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Solutions, LLC*, 2009 WL 5179535, at *9 (S.D.N.Y. Dec. 29, 2009) (granting motion to dismiss counterclaim for unjust enrichment because "[w]hile pleading in the alternative is permissible, the [counterclaim] sets forth no plausible basis to invoke recovery . . . because there is no dispute that the goods and services were provided pursuant to a contract"). In this case, Plaintiff uniformly contends that she purchased iYogi's technical support services pursuant to the agreement to which she subscribed. (Compl. ¶¶ 43-56.) Those allegations render Plaintiff's unjust enrichment claim insufficient as a matter of law because her contentions are, without exception, that she entered into a contract with iYogi. Plaintiff's unjust enrichment claim should therefore be dismissed.[5]

---

[5] Plaintiff suggestion that iYogi's motion to dismiss her unjust enrichment cause of action is dependent upon the Court's acceptance of the Terms of Use to which Plaintiff agreed as part of her contract is misplaced. (Opp'n Mem. at 7-8, 14-15.) The existence of a contract with iYogi, which *Plaintiff* alleges in her complaint without qualification, (Compl. ¶¶ 54-56), not any specific term of that contract, precludes Plaintiff's unjust enrichment claim.

8

**C. Plaintiff's Claims Are Untimely**

It is well-settled that a defendant may rely in a motion to dismiss on documents that a plaintiff "either possessed or knew about and that are integral to the complaint." (*See* iYogi Mem. at 3 n.1, 6 (citing *Furman v. Cirrito*, 828 F.2d 898, 900 (2d Cir. 1987), *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 200 (S.D.N.Y. 2008), and *Mills v. Everest Reins. Co.*, 410 F. Supp. 2d 243, 247 (S.D.N.Y. 2006)).) Accordingly, iYogi properly submitted with its motion a copy of the email to Plaintiff confirming her purchase of an "iYogi Gold Subscription" for $99.99, effective September 16, 2012, and the Terms of Use to which Plaintiff agreed in September 2012 as part of that contract.[6] The Terms of Use are relevant to iYogi's motion to dismiss Plaintiff's claims as untimely,[7] and Plaintiff does not dispute the enforceability of contractual limitation provisions like the one-year period in the Terms of Use. (iYogi Mem. at 16-17 (citing cases).)

Plaintiff agreed on September 16, 2012 that she would commence any cause of action within one year, or that such claim would be "forever waived and barred." (*See* Green Decl. at Ex. 2 (Dhar Decl. at Ex. A).) Plaintiff filed her complaint on September 30, 2013, more than one year later, but argues without citation that the statutory limitations period for fraud claims should still apply. (Opp'n Mem. at 15-17.) Plaintiff's argument is legally incorrect. *See Infectious*

---

[6] *See* Green Decl. at Ex. 2 [Docket No. 21-2] (annexed as Exhibits A and B to the Declaration of V. Dhar, dated Dec. 16, 2013 ("Dhar Decl.")); *see also* Compl. ¶¶ 54-56.

Although Plaintiff argues that the Terms of Use should not be considered where there is a dispute regarding its authenticity, (Opp'n Mem. at 7-8), Plaintiff never actually disputes the authenticity of the documents or identifies facts upon which she might, (*id.*). At most, Plaintiff claims that because the documents "directly contradict" her allegations, "their authenticity and applicability are squarely in dispute." (*Id.* at 8)  But inconsistencies between Plaintiff's complaint and documents she does not actually challenge do not give rise to questions about the authenticity of the documents.

[7] To the extent Plaintiff asserts that her challenge to iYogi's use of the Terms of Use are relevant to any argument other than the timeliness of her lawsuit, she misinterprets iYogi's arguments.

*Disease Solutions, P.C. v. Synamed, LLC*, 2012 WL 1106847, at *8, *11 (E.D.N.Y. Mar. 30, 2012) (stating "Section 201 of the C.P.L.R. 'allows contracting parties to shorten a statutory period of limitations if that period is contained in a written agreement between the parties'" and dismissing claims under a one-year contractual limitations provision) (citations omitted).

Alternatively, Plaintiff argues that her causes of action did not accrue until after September 2012 because it took her several weeks—"when she realized that her computer was continuing to malfunction"—before she was on notice of the facts upon which her fraud claim is based. (Opp'n Mem. at 16-17.) That alleged fact, however, appears nowhere in Plaintiff's complaint, and a party cannot amend a pleading with self-serving and conclusory allegations in a brief. *See Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss") (internal quotation marks and citation omitted). And any allegation that Plaintiff's computer did not "continu[e] to malfunction" for several weeks after it had been "running slowly, freezing and locking up" or otherwise "malfunctioning" would contradict Plaintiff's allegations that iYogi failed to fix her computer. An allegation that iYogi temporarily fixed her computer, but that her troubles returned several weeks later, would be inconsistent with the allegations with which Plaintiff attempts to state her fraudulent inducement and unjust enrichment claims.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening memorandum of law, iYogi requests that the Court dismiss Plaintiff's complaint in its entirety and with prejudice.

| | |
|---|---|
| Dated: New York, New York<br>      January 30, 2014 | Respectfully submitted,<br><br>*/s/ Paul Bartholomew Green*<br>Jayant W. Tambe<br>Thomas E. Lynch<br>Paul Bartholomew Green<br>JONES DAY<br>222 East 41st Street<br>New York, NY 10017-6702<br>Telephone: (212) 326-3939<br><br>*Attorneys for Defendant iYogi, Inc.* |

11

**DECLARATION OF SERVICE**

  Paul Bartholomew Green, an attorney admitted to practice before the bar of this Court, declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that a true and correct copy of the accompanying iYogi, Inc.'s Reply Memorandum of Law in Further Support of Its Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) will be served via the Court's ECF electronic filing system simultaneously with the filing of this declaration, and that an additional copy will be sent to the parties listed below via UPS overnight mail.

    Lee A. Weiss
    Berns Weiss LLP
    585 Stewart Avenue, Suite L-20
    Garden City, New York  11530

    Rafey S. Balabanian
    Benjamin H. Richman
    Chandler R. Givens
    David I. Mindell
    Edelson LLC
    350 North LaSalle, Suite 1300
    Chicago, Illinois  60654


Dated: New York, New York
    January 30, 2014        */s/ Paul Bartholomew Green*
                  Paul Bartholomew Green