UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

JANET BURTON, individually and on
behalf of all others similarly situated,

                    Plaintiff,            13-CV-6926 (DAB)
                                          MEMORANDUM AND ORDER
          v.

IYOGI, INC.,

                    Defendant.
------------------------------------------X

DEBORAH A. BATTS, United States District Judge.

     Before the Court is a Motion to Dismiss the Complaint of

Plaintiff Janet Burton ("Plaintiff" or "Burton") pursuant to

Federal Rule of Civil Procedure 12(b)(6), filed by Defendant

iYogi, Inc. ("Defendant" or "iYogi") on December 16, 2013. The

bases for Defendant's Motion are: (1) Plaintiff's claims are

untimely; (2) Plaintiff fails to plead sufficiently fraudulent

inducement; and (3) Plaintiff's unjust enrichment claim is

precluded because of the existence of a contract. For reasons

detailed herein, Defendant's Motion is DENIED.


I. FACTUAL BACKGROUND

     For purposes of the Motion to Dismiss, the facts alleged in

Complaint are presumed to be true. Conyers v. Rossides, 558

F.3d 137, 143 (2d Cir. 2009). All reasonable inferences are

drawn in favor of Plaintiff. Id.

Defendant iYogi, Inc. is a provider of technical computer support services. (Compl. ¶ 1.) Its services include computer diagnostics and repair, general troubleshooting, updates to computer drivers, security protection, and PC speed and performance optimization. (Compl. ¶ 13.) As part of its marketing, iYogi offers "Free PC Diagnostics," involving a brief phone consultation between a "Technician" and potential customer. (Compl. Figure 1.) During the consultation, and through remote diagnosis, a "Tech Expert" "[i]dentifies the problem" and "[r]ecommends a solution." (Compl. Figure 2.)

On September 16, 2012, Plaintiff Burton sought technical support for her "poorly performing" HP computer because it was "running slowly, freezing and locking-up." (Compl. ¶ 43.) After searching the Internet for "HP tech support," Burton encountered an advertisement for iYogi's services. (Compl. ¶¶ 43-44.) Plaintiff contends the language of the advertisement was substantially similar to the following[1]: "iYogi provides wide scope HP support online for users to resolve all HP computer related issues through the assistance of iYogi Certified Technicians," and "[t]he experts can help troubleshoot several HP errors like overheating issues, registry conflicts, etc." (Compl. ¶ 44, Figures 12-13.)

---

[1] In preparing for litigation, Plaintiff found iYogi advertisements online and excerpted them in the Complaint.

Burton called a toll-free telephone number to connect with an iYogi technician. (Compl. ¶ 46-47.) During the call, the technician remotely accessed Burton's computer, browsed through various computer files, and stated that they were contributing to the computer's problems. (Compl. ¶ 49.) The technician advised Burton to download iYogi's "diagnostic software," which would purportedly allow for a "diagnostic scan." (Compl. ¶ 50.) Plaintiff did so and the technician used the software on Burton's computer. (Compl. ¶ 51.) After the scan was complete, the software displayed a "Dashboard" indicating Burton's computer "possessed a large amount of 'junk files' and 'Registry errors.'" Id. The software also reported in red typeface that her computer's "System State" was "Critical." Id. With the software's warnings still visible, the technician informed Burton that her computer was at serious risk, damaged, and would likely crash if she did not purchase iYogi's services to repair her computer. (Compl. ¶ 52.)

Burton alleges that iYogi technicians operate using scripts that guide their review of potential customers' computer screens, subsequent diagnostic assessments, and recommendations for services, which are intended to trick customers with little technical expertise, like Plaintiff, into believing that iYogi technicians are performing assessments and identifying problems. (Compl. ¶¶ 16, 21, 27, 39.) In fact, Burton claims, no credible

diagnostic testing of her, or any other customer's, computer was actually conducted. (Compl. ¶¶ 30-33, 53.) She alleges that "the methods designed and implemented by iYogi cannot be used to reliably or honestly deduce the status of a computer's operations." (Compl. ¶ 26.) Burton alleges that because iYogi technicians simply identify whether files exist without assessing their impact on the functioning of customers' computers, virtually every potential customer will receive a warning that "junk files" are harming their computers. (Compl. ¶¶ 33, 37.) Burton also cites to three articles by "independent computer and security experts" about iYogi's deceptive sales tactics, and alleges that the same alleged errors were found on a brand new computer.[2] (Compl. ¶¶ 29, 40-42). Following the "fake evaluation," the scripted dialogue encourages potential customers to purchase iYogi services to fix their computers. (Compl. ¶¶ 38-39.)

Relying on iYogi's representations, Burton agreed to purchase a one-year "iYogi Gold Subscription" for $99.99. (Compl. ¶ 54.) Burton alleges that, but for these representations, she would not have purchased iYogi's technical support services. (Compl. ¶ 55.) According to Burton, even

---

[2] The Court notes that the Plaintiff does not make any factual allegations regarding the specific expertise or credibility of these sources, nor about the validity of the process by which the "brand new computer" was assessed by iYogi and how that process compares to Plaintiff's own experience.

after subscribing, her computer continued to malfunction as it had before iYogi performed services. (Compl. ¶ 56.)

On September 30, 2013, on behalf of herself and a Class of similarly situated individuals, Plaintiff brought this lawsuit against iYogi based on two causes of action, fraudulent inducement and unjust enrichment. (Compl. ¶¶ 65-79.)


## II. DISCUSSION

### A. Legal Standard for a Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained that a claim has facial plausibility,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that

the pleader is entitled to relief, in order to give the
defendant fair notice of what the claim is and the grounds upon
which it rests." Twombly, 550 U.S. at 555 (internal quotations
and ellipses omitted). "[A] plaintiff's obligation to provide
the grounds of his entitlement to relief requires more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." Id. (internal
quotations omitted). In keeping with these principles, the
Supreme Court stated,

> [A] court considering a motion to dismiss can choose to
> begin by identifying pleadings that, because they are no
> more than conclusions, are not entitled to the
> assumption of truth. While legal conclusions can provide
> the framework of a complaint, they must be supported by
> factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement to relief.

Iqbal, 556 U.S. at 679. In considering a motion under Rule
12(b)(6), the Court must accept as true all factual allegations
set forth in the Complaint and draw all reasonable inferences in
favor of the non-movant. Board of Educ. of Pawling Cent. Sch.
Dist. v. Schultz, 290 F.3d 476, 479 (2d Cir. 2002) (citation
omitted). However, this principle is "inapplicable to legal
conclusions," Iqbal, 556 U.S. at 678, which, like the
Complaint's "labels and conclusions," are disregarded. Twombly,
550 U.S. at 555. Nor should a court "accept [as] true a legal
conclusion couched as a factual allegation." Id.

B. Choice of Law

As a preliminary matter, because this case is before the Court based on diversity jurisdiction, we must determine which law governs. Federal courts typically apply the choice-of-law rules of the forum state. See GlobalNet Financial.Com., Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 382 (2d Cir. 2006). Here, the Parties do not dispute that New York law governs this matter, and this "implied consent is sufficient to establish choice of law." Motorola Credit Corp. v. Uzan et al., 388 F.3d 39, 61 (2d Cir. 2004)(citations omitted).[3] Thus, New York law governs this dispute.


C. Timeliness of Plaintiff's Claims

1. Extrinsic Evidence

Defendant argues that Plaintiff entered into a contract with iYogi which limits the time for bringing her claims to one year and which precludes her from bringing an unjust enrichment claim. To support this argument, Defendant attached to its Motion a Declaration by iYogi's President of Marketing, Vishal

---

[3] Defendant relies on New York law, contends that it is unaware of any potential conflict of law between New York and Kentucky law, and states that a conflict of law analysis is unnecessary. (Def. Memo at 7.) Plaintiff relies on New York law throughout her Memorandum of Law without addressing choice of law. (Plf. Opp'n at 10, 16.) Plaintiff is deemed to have waived any choice-of-law argument. See Doctor's Assocs., Inc., v. Distajo, 107 F.3d 126, 130 (2d Cir. 1997).

Dhar ("Dhar Declaration"), a copy of iYogi's general Terms of
Use ("Terms of Use"), and a copy of a confirmation email sent by
Defendant to Plaintiff upon subscription to iYogi services
("Confirmation Email") (collectively, "Extrinsic Documents").
(Def. Memo Ex. 2, 2-A, 2-B.) The Terms of Use contain a
provision entitled "Limitations on Actions" requiring causes of
action to be commenced within one year after they arise. (Def.
Memo Ex. 2-A.)

On a motion to dismiss, the Court may consider "only the
complaint, any written instrument[s] attached to the complaint
as an exhibit, any statements or documents incorporated in it by
reference, and any document upon which the complaint heavily
relies." In Re Thelen LLP v. Seyfarth Shaw LLP, 736 F.3d 213,
219 (2d Cir. 2013) (citations and internal quotations omitted).
Generally, if the Court considers extrinsic evidence on a motion
to dismiss, it should convert the motion to a motion for summary
judgment. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)
(citing Fed. R. Civ. P. 12(b)(6), 56).

Even when documents are not attached or incorporated by
reference to the Complaint, "the court may nevertheless consider
[the evidence] where the complaint 'relies heavily upon its
terms and effect,' which renders the document 'integral' to the
complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53
(2d Cir. 2002) (citations omitted). Further, "plaintiff's

reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Id. at 153 (emphasis in original). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). Finally, for the Court to consider documents outside of the Complaint, there must be "no dispute [] regarding the authenticity or accuracy of a document" and "no material disputed issues of fact regarding the relevance of the document." Faulkner, 463 F.3d at 134.

Here, Defendant does not contend that Plaintiff attached or incorporated by reference the Extrinsic Documents to the Complaint, nor does Defendant contend that Plaintiff's claims arise out of them or that she otherwise relied on the Extrinsic Documents in her Complaint. Defendant cites to a single allegation to argue that the Extrinsic Documents are integral: "Relying on iYogi's representations, Burton agreed to purchase a one-year 'iYogi Gold Subscription' for $99.99." (Compl. ¶ 54.)

However, Plaintiff's allegation that she purchased a
subscription is not the equivalent of an allegation that she
entered into an agreement with Defendant or that she saw and
agreed to the Terms of Use.[4]

Although the Court must take the Plaintiff's factual
allegations as true and make inferences in favor of the
Plaintiff on a motion to dismiss, the Court finds it implausible
that Plaintiff was not required to accept a Terms of Use or
similar agreement prior to receiving iYogi's services, as such
"click-wrap" contracts are standard in Internet-based sales and
service provision. See, e.g., Register.com, Inc. v. Verio,
Inc., 356 F.3d 393, 403 (2d Cir. 2004). Nevertheless, Plaintiff
has not relied on the Terms of Use as the basis of her claims,
since her claims sound in fraudulent inducement and quasi-

_____

[4] The cases cited by Defendant (Def. Reply at 9) are easily
distinguishable from the instant case. See Furman v. Cirrito,
828 F.2d 898, 900 (2d Cir. 1987) (reviewing the partnership
agreement and contract for sale of assets in an action between
partners because they were integral and in the record before the
court of appeals, and noting that the district court could have
converted the motion to dismiss to a motion for summary
judgment); Berman v. Sugo LLC, 580 F.Supp.2d 191, 200 (S.D.N.Y.
2008) (where breach of contract and breach of fiduciary duty
were alleged, a Letter of Understanding and Operating Agreement
between the parties, which plaintiff relied on in its complaint
and attached as an exhibit in another action, were integral);
Mills v. Everest Reins. Co., 410 F.Supp.2d 243, 247-48 (S.D.N.Y.
2006) (in case seeking the rescission of a reinsurance agreement
and alleging fraudulent conveyance, documents relating to the
agreement were integral).

contract, rather than breach of contract or warranty.[5]  Although

Plaintiff did not seek rescission of the alleged contract,

neither did she reference it in her Complaint nor rely on it as

the basis of her claims.  Defendant readily admits that

Plaintiff does not rely on the Extrinsic Documents, stating

"[t]o the extent Plaintiff asserts that her challenge to iYogi's

use of the Terms of Use are relevant to any other argument other

than the timeliness of her lawsuit, she misinterprets iYogi's

arguments." (Def. Reply at 9, n. 7.)[6]

        Furthermore, Plaintiff disputes the veracity and

authenticity of the Extrinsic Documents. (Plf. Opp'n at 8.)

Making inferences in favor of Plaintiff, and given that

---

[5] Although the Court need not decide this issue on the facts
before it, had Plaintiff brought breach of contract claims based
on the Terms of Use, the Extrinsic Documents likely would have
been found to be "integral" to her Complaint, thus precluding
her from contesting the time limitation provision.  See
Morrissey v. Gen. Motors Corp., 21 F. App'x 70, 73 (2d Cir.
2001)("One elects either to continue with the contract
fraudulently induced or to rescind it. If one elects to continue
with it, one accepts all the burdens contained in the contract
as well as the benefits.")(citation omitted).  The Court notes
that Plaintiff would not have been precluded from pleading both
fraud and breach of contract together as long as she pleaded a
plausible legal duty apart from the contract. However, she would
have also been bound by contract provisions such as limitations
on liability and statutes of limitations restrictions.  See
Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d
171, 183-84 (2d Cir. 2007) ("A claim based on fraudulent
inducement of a contract is separate and distinct from a breach
of contract claim under New York law.").
[6] As noted below, this statement is inconsistent with Defendant's
later claim that the alleged contract precludes Plaintiff's
unjust enrichment claim.  See infra at II.D.2.

Plaintiff did not rely on the Extrinsic Documents and disputes their authenticity, it cannot be said that they are "integral" to the Complaint. As such, the Court will not consider the Extrinsic Documents at this stage of the proceeding. Plaintiff was not bound by the one-year limitation contained in the Terms of Use.

The Court agrees with Plaintiff that even if the one-year limitation applied, Plaintiff's claims would be timely. (Plf. Opp'n at 16-17.) "The Statute of Limitations begins to run once a cause of action accrues . . . that is, when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." <u>Aetna Life & Cas. Co. v. Nelson</u>, 67 N.Y.2d 169, 175 (N.Y. 1986). In the case of fraud, the cause of action accrues when the Plaintiff discovers or reasonably could have discovered the fraud. N.Y. C.P.L.R. § 213(8) (Consol. 2014). In this case, Plaintiff discovered that she had suffered injury only after iYogi told her their services would fix her computer, and her computer continued to malfunction. (Compl. ¶ 56; Plf. Opp'n at 17.) Although Plaintiff did not allege a specific date of discovery, the Complaint alleges that the discovery occurred sometime after her purchase of iYogi services. (Compl. ¶ 56.) The Court rejects Defendant's argument that Plaintiff "amend[ed the] pleading with self-serving and conclusory allegations" when she noted in her

Opposition that she did not discover the fraud until a few weeks after her purchase of services. (Def. Reply at 10; Plf. Opp'n at 17). At this juncture, although the Court must rely exclusively on allegations made in the Complaint, it may also draw reasonable inferences in favor of the non-moving party. The additional information provided in Plaintiff's Opposition is not necessary for the Court to infer that a reasonably diligent Plaintiff might have discovered the fraud two weeks after purchase, thus beginning the clock at the end of September 2012 and making her claims timely even under the one-year limitation.

### 2. Applicable Statutes of Limitation

Assuming the one-year limitation does not govern, under New York Law, fraud claims must be brought within the "greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8) (Consol. 2014). In this case, even assuming, arguendo, that Plaintiff discovered the fraud immediately upon purchase of services, the alleged fraud occurred on September 16, 2012, and Plaintiff filed her Complaint on September 30, 2013. Therefore, Plaintiff brought her claims comfortably within either the two-year statute of limitations for discovering the fraud, or the six-year statute of limitations. (Compl. ¶ 43.)

For an unjust enrichment claim, the applicable statute of limitations "depends on the nature of the substantive remedy which the plaintiff seeks." <u>Matana v. Merkin</u>, 957 F.Supp.2d 473, 494 (S.D.N.Y. 2013) (citing <u>Loengard v. Santa Fe Indus., Inc.</u>, 519 N.Y.S.2d 801, 803 (N.Y. 1987)). "The limitations period is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages." <u>Id.</u> (citing <u>Ingrami v. Rovner</u>, 847 N.Y.S.2d 132, 134 (N.Y. App. Div. 2007)).[7] Here, the Plaintiff seeks restitution and disgorgement of monies unjustly obtained by Defendant. (Compl. ¶ 25.) Therefore, the three-year statute of limitation governs Plaintiff's unjust enrichment claim. Again, Plaintiff filed her Complaint well within the limitation period.

D.    Plaintiff's Claim for Fraudulent Inducement

1. Legal Standard for Fraudulent Inducement

To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its

---

[7] In general, New York courts apply N.Y. C.P.L.R. § 213(1) for equitable remedies, and N.Y. C.P.L.R. § 214(3) for monetary damages. <u>Loengard</u>, 519 N.Y.S.2d at 803; <u>Ingrami</u>, 847 N.Y.S.2d at 134.  <u>But see</u> <u>Golden Pac. Bancorp v. F.D.I.C.</u>, 273 F.3d 509, 518 (2d Cir. 2001) ("The statute of limitations in New York for claims of unjust enrichment, breach of fiduciary duty, corporate waste, and for an accounting is generally six years.")(citing N.Y. C.P.L.R. §§ 213(1), (7)).

falsity (3) and intent to defraud (4) reasonable reliance on the
part of the plaintiff and (5) resulting damage to the
plaintiff."  Crigger v. Fahnestock & Co., Inc., 443 F.3d 230,
234 (2d Cir.2006) (citation omitted); see also Lama Holding Co.
v. Smith Barney, Inc., 646 N.Y.S.2d 76, 80 (N.Y. 1996).

In cases alleging fraud, the Plaintiff "must state with
particularity the circumstances constituting fraud or mistake.
Malice, intent, knowledge, and other conditions of a person's
mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The
stated circumstances are to include time, place, and speaker.
Aetna, 404 F.3d at 579 (citation omitted).

Defendant argues that Plaintiff has not stated a claim for
fraudulent inducement because she has failed to meet the
heightened pleading standard of 9(b).  Defendant claims
Plaintiff has not alleged that Defendant's statements were false
or that Defendant had the requisite fraudulent intent.
Specifically, Defendant claims (a) representations by
Defendant's technician about the condition of Plaintiff's
computer were "substantially the same" as her own, (b)
Defendant's statements were non-actionable opinions or puffery,
and (c) Plaintiff could not have plead fraudulent intent without
alleging that Defendant's statements were false.  Assuming the
facts to be true and drawing reasonable inferences in favor of

Plaintiff, the Court finds that Plaintiff sufficiently pleads
fraudulent inducement.

2. Plaintiff Alleges False Statements by iYogi

Defendant's argument that Plaintiff does not allege
misrepresentations of material fact fails. Plaintiff alleges
that iYogi online advertisements and the technician she spoke to
over the phone made false representations about the capacity of
iYogi's diagnostic software, the actual problems diagnosed on
her computer, and iYogi's ability to fix them. (Compl. ¶¶ 49,
51, 52, Figs. 1, 2.) Plaintiff alleges that the representations
are untrue because the software is not capable of accurately
diagnosing her or other customers' computer problems, and iYogi
services did not in fact fix her computer, which continued to
malfunction. (Compl. ¶¶ 26, 56.) Specifically, she alleges
that the "junk files" and "Registry errors" that the iYogi
technician and software identified are found on virtually every
computer, including a new computer, are not necessarily harmful,
and no credible test was performed to determine whether they
were actually causing the problems on Plaintiff's computer
(Compl. ¶¶ 29, 30, 32-33, 35-37, 51, 53-54.) Further, she
alleges that iYogi technicians follow a script that "invariably
report[s] that potential customers' computers are in dire

condition" regardless of the actual condition of their computers. (Compl. ¶ 39.)

Defendant claims that the iYogi techinican's statements about the condition of her computer could not be false because they are "substantially the same" as Plaintiff's own statements. (Def. Memo at 8-9.) Defendant bolsters its claim by providing a side-by-side comparison of Plaintiff's "admissions" about her computer, and Defendant's "alleged misrepresentations." Id. While it is true that some of the iYogi technican's statements mirror Plaintiff's,[8] Defendant has taken these statements out of context. Plaintiff admits that there was a problem with her computer, but alleges that Defendant misrepresented the source and severity of the problems and iYogi's ability to fix them to induce her into buying iYogi's services. Just as a medical patient's complaint of arm pain differs from a doctor's x-ray analysis of a fractured limb, so too does a customer's complaint of computer trouble differ from a technical "diagnosis" of where and how there is a malfunction.

Defendant cites three Northern District of California cases, which are not binding on this Court, to suggest the Complaint is not sufficiently specific. Reliance on these cases

_____

[8] Compare Plaintiff's statement that her computer was "poorly performing" and was "running slowly, freezing and locking-up" (Compl. ¶ 43), with the iYogi technician's statement that her computer was "damaged" and "would likely crash" (Compl. ¶ 52).

is misplaced because each involved allegations vaguer than Plaintiff's and with defects not present in Plaintiff's Complaint.[9]  Further, although generally, the allegations in these cases are very similar to the instant case, they focus solely on defendant software companies' advertising and marketing, and not on representations made directly to the plaintiff customers by defendants' employees.  See Bilodeau v. McAfee, Inc., No. 12-CV-04589-LHK, 2013 WL 3200658, *7-8 (N.D. Cal. June 24, 2013) ("[T]he complaint paraphrases the allegedly false representations without citation..." and "[T]he complaint does provide direct quotations from [defendant's] website . . . [but] without attributing these representations to any specific Defendant at any specific time."); Gross v. Symantec Corp., No. C 12-00154 CRB, 2012 WL 3116158, *3-5 (N.D. Cal. July 31, 2012) ("[The complaint] does not provide any allegations indicating what [defendant] actually said regarding the functional capabilities of its software." (emphasis in original); "Without

---

[9] Additionally, as Plaintiff notes (Plf. Opp'n at 12), the motions to dismiss were granted without prejudice.  In Gross, Plaintiff amended the complaint, presumably to fix the defects identified by the court, and the case ultimately settled.  See Order Granting Motion for Settlement, Gross v. Symantec Corp., No. 12-00154 (N.D. Cal. March 21, 2014), ECF No. 88. Similarly, in Worley, Plaintiff amended the Complaint and the case is still pending.  See Amended Complaint, Worley v. Avanquest N. Am., Inc., No. C 12-04391 SI (N.D. Cal. Feb. 22, 2013), ECF No. 52; see also ECF No. 167 (denying motion for reconsideration of denial of motion to dismiss amended complaint); ECF No. 178 (denying additional motion to dismiss).

direct quotations from the [defendant's] website or other marketing materials, the Court cannot determine how exactly [defendant] advertised its products. This is critical to the fraud analysis because Plaintiff's entire suit turns on how [defendant's] representations compare to the actual functionality of its software."); <u>Worley v. Avanquest N. Am., Inc.</u>, No. C 12-04391 SI, 2013 WL 450388, *3 (N.D. Cal. Feb. 5, 2013), "[T]he Complaint is devoid of any specifics regarding how plaintiff's computer continued to malfunction.").[10] Moreover, the Northern District of Illinois denied a motion to dismiss on very similar facts. <u>See</u> <u>Hall v. Tune Up Corp.</u>, No. 13 C 1804, 2013 WL 4012642 (N.D. Ill. Aug. 6, 2013) (denying motion to dismiss because plaintiff plead sufficient facts to establish fraud, breach of contract, and unjust enrichment claims).

---

[10] The Court notes that the plaintiffs in these cases were represented by the same law firm as Plaintiff in the instant case. In dismissing plaintiff's claims, the <u>Bidodeau</u> court joined other courts in similar cases in cautioning Plaintiff's counsel against "the copying and pasting of claims from one complaint to another." <u>Bilodeau,</u> 2013 WL 3200658 at *8, n.1. Although there appears to be some overlap between Plaintiff's Complaint here and the three Northern District of California cases cited by Defendant, the Court is satisfied that the Complaint in the instant case provides sufficient and distinct detail as to Defendant's misrepresentations to warrant different treatment at this stage in the proceeding.

### 3. Defendant's Statements Were Not "Puffery"

Defendant's argument that its promises to diagnose and troubleshoot computers are not actionable because they constitute puffery also fails. In general, "statements will not form the basis of a fraud claim when they are mere 'puffery' or opinions as to future events." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994). In the context of false advertising, the Second Circuit has described puffery alternatively as "an exaggeration or overstatement expressed in broad, vague, and commendatory language" or "[s]ubjective claims about products, which cannot be proven either true or false."   Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159 (2d Cir. 2007) (citations omitted).[11] In this context, puffery can come in at least two forms: "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion," and "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." Id. at 160. "Claims or statements in advertising may go beyond mere puffing and enter the realm of fraud where the product must inherently fail to do

---

[11] The Court notes that Time Warner was a claim for false advertising under the Lanham Act, 15 U.S.C.A. § 1125(a)(1). Puffery is similarly not actionable under New York General Business Law.  See Verizon Directories Corp. v. Yellow Book USA, Inc., 309 F.Supp.2d 401, 405-06 (E.D.N.Y. 2004).  Plaintiff here claims common law fraud and unjust enrichment.  Nevertheless, the discussion of puffery is instructive.

what is claimed for it." United States v. Regent Office Supply Co., 421 F.2d 1174, 1180 (2d Cir. 1970). Although opinions are generally not actionable in fraud, "[t]he expression of an opinion or prediction which the declarant does not himself believe is a false statement of fact." Magnaleasing, Inc. v. Staten Island Mall, 428 F.Supp. 1039, 1043 (S.D.N.Y. 1977), aff'd, 563 F.2d 567, 569 (2d Cir. 1977). Additionally, "where one party [has] superior knowledge, the expression of an opinion implies that the declarant knows facts which support that opinion and that he knows nothing which contradicts the statement." Id.

Whether Defendant provides the services it claims to in its advertisements and through its technicians and whether those services accurately identify and fix customers' problems can be proven true or false. Further if, as Plaintiff alleges, Defendant presents its software as "diagnostics" and identifies its employees as "tech experts" through its advertising and scripted dialogues with customers, it cannot be said that Defendant's representations are mere puffery or opinions; Defendant is presenting statements about customers' computers as fact based on expert assessment. Defendant also claims that the Plaintiff does not allege that "iYogi's representative did not actually hold those opinions." (Def. Memo at 11.) However, Defendant ignores the numerous references in Plaintiff's

Complaint to the scripted dialogues that iYogi technicians are trained to use. Even if an individual iYogi representative believed the diagnostic testing was accurate, that would not absolve iYogi, the Defendant, of liability for designing the misleading software and scripts and training its employees to use them. See, e.g., Wolff Office Equip. Corp. v. Wang Labs., Inc., 87 CIV. 1498 (SWK), 1988 WL 143119, *1 (S.D.N.Y. Dec. 30, 1988) (finding that "[w]hile plaintiff does not allege that the individuals identified as making the false statements on behalf of the company knew what they were stating was false, the Court believes that the complaint read as a whole alleges facts from which scienter can be inferred.")

In addition, Defendant's statements were not "exaggerated, blustering, and boasting" such that "no reasonable buyer would be justified in relying" on them. Rather, Defendant's advertisements offered diagnostic services from a "tech expert" who would "identif[y] problem[s]" and make a recommendation, a representation that was reaffirmed by the technician when Plaintiff called the iYogi phone number. (Compl. Figs. 1 and 2.) See Gross, 2012 WL 3116158 at *10 (finding that the software company's statements through online advertising were not puffery because they were "objective descriptions of software utility, which inform the customer about the specific functions that [the software] has been programmed to perform.").

Compare Time Warner Cable, 497 F.3d at 160-61 (where

advertisements for a cable TV provider depicted competitor's

picture quality as "unwatchably blurry, distorted, and

pixelated" that was "not even remotely realistic," the puffery

defense survived); Serrano v. Cablevision Sys. Corp., 863

F.Supp.2d 157, 167 (E.D.N.Y. 2012) (advertisements representing

"blazing fast speed" and "lightning-fast Internet access [that]

takes the waiting out of the Web" are not actionable as

puffery).   Thus, the Court rejects the argument that Defendant's

statements were puffery and therefore not actionable.


        4. Plaintiff Alleges Justifiable Reliance

    The question of whether Plaintiff justifiably relied on the

statements goes both to whether the statements were puffery, and

to the elements of fraudulent inducement more generally. The

reasonableness of Plaintiff's reliance on these statements is a

question of fact not suited for disposition at this stage;

however, whether Plaintiff sufficiently alleges reliance is an

appropriate question on a motion to dismiss.   See, e.g., Bank of

Am. Corp. v. Lemgruber, 385 F.Supp.2d 200, 230 (S.D.N.Y. 2005)

(citing cases).   When determining whether Plaintiff's reliance

was reasonable, the Court should consider "the entire context of

the transaction . . . 'including factors such as its complexity

and magnitude, the sophistication of the parties, and the

contents of any agreements between them.'" <u>Matsumura v. Benihana</u>

<u>Nat'l. Corp.</u>, 542 F.Supp.2d 245, 256-57 (S.D.N.Y. 2008) (citing

<u>Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc.</u>, 343

F.3d 189, 195 (2d Cir.2003). Here, Plaintiff alleges that she

relied on iYogi's representations in her decision to buy iYogi

services. (Compl. ¶ 54.) She also alleges that consumers of

average technical knowledge would lack the expertise to

understand exactly what the technician was doing, but would

believe that the iYogi technician was actually performing

diagnostic testing. (Comp. ¶¶ 26, 27.) Viewed in the context of

the transaction and in light of the differences in

sophistication between customers and providers of technological

services, the Court finds that Plaintiff has plead reasonable

reliance. <u>See, e.g.,</u> <u>Accusystems, Inc. v. Honeywell Info. Sys.,</u>

<u>Inc.</u>, 580 F.Supp. 474, 482 (S.D.N.Y. 1984) (finding that the

computer industry is a "dynamically growing industry" and thus

reliance on the seller's representations about the product was

reasonable).


    5. Plaintiff Alleges Requisite Intent

    Defendant also contends that Plaintiff failed to plead

sufficient scienter. (Def. Memo at 12.) The requisite strong

inference of intent may be drawn either (a) by alleging facts to

show defendants had both motive and opportunity to commit fraud,

or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." <u>Acito v. Imcera Group, Inc.</u>, 4 F.3d 47, 52 (2d Cir.1995) (quoting <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir.1994)). "Where the false representations are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." <u>Regent</u>, 421 F.2d at 1182.

Plaintiff contends that iYogi designed the diagnostic software, prepared scripts, and trained iYogi employees with the knowledge and intent that virtually every customer, including Plaintiff, would believe they had serious computer problems and be induced into buying iYogi services.  (Compl. ¶¶ 16, 37, 39.) This is sufficient circumstantial evidence to warrant a strong inference of fraudulent intent. <u>See, e.g.</u>, <u>People v. Raskin</u>, 641 N.Y.S.2d 657, 658 (N.Y. App. Div. 1996) (finding sufficient proof of fraudulent intent in criminal action for scheme to defraud and securities fraud where defendant supervised salespeople, used "scripted telephone calls and follow-up mailing of promotional materials" and "his employer's sales method, if not its sales script, to cause a customer to feel a false sense of urgency about the supply of [the goods]."); <u>Moore v. PaineWebber, Inc.</u>, 306 F.3d 1247, 1255-56 (2d Cir. 2002)

(noting that existence of standardized sales scripts and training are relevant evidence of misrepresentations in a common scheme to defraud potential customers of insurance company). See also Wolff Office Equip. Corp., supra.


D. Plaintiff States a Claim for Unjust Enrichment

    1. Legal Standard for Unjust Enrichment

To succeed on an unjust enrichment claim under New York law, a plaintiff must show: (i) defendant was enriched (ii) at plaintiff's expense; and (iii) equity and good conscience require restitution.  Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). Plaintiff must also allege "a relationship or connection between the parties that is not 'too attenuated'" Georgia Malone & Co., Inc., v. Rieder et ano., 950 N.Y.S.2d 333, 336 (N.Y. 2012) (citations omitted).  Unjust enrichment "lies as a quasi-contract claim" and "is an obligation the law creates in the absence of any agreement."  Goldman v. Metropolitan Life Ins. Co., 807 N.Y.S.2d 583, 587 (N.Y. 2005) (citation omitted). It is "not a catchall cause of action to be used when others fail" and is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 779, reargument denied,

19 N.Y.3d 937, (N.Y. 2012).  Unjust enrichment is not available
where it simply duplicates, or replaces, a conventional contract
or tort claim.  Id.

2. Plaintiff's Unjust Enrichment Claim is Not Precluded

Defendant does not claim that Plaintiff failed to allege
the requisite elements of her unjust enrichment claim.  Rather,
Defendant argues that the claim is precluded because "there is a
valid and enforceable contract covering the subject matter of
the claim."  (Def. Memo at 15.) To support this argument,
Defendant cites a string of cases holding that recovery under a
quasi-contract theory is unavailable where there is an adequate
remedy available at law, namely, through contract.  Id.
Defendant is correct about the law.  However, the cases
Defendant cites are inapplicable here because there is a dispute
of fact as to whether there is a valid and enforceable contract.

Defendant has not proven that a contract exists that
governs this dispute. As discussed above, the Extrinsic
Documents have not been incorporated by reference nor relied on
by Plaintiff in her Complaint, and Plaintiff disputes their
authenticity and veracity.  Thus, the Court cannot consider them
at this stage of the litigation.  Defendant asserts, without
legal citation, that whether the Court accepts the Terms of Use
is irrelevant to the success of the motion to dismiss because

the existence of a contract, not the specific terms of the contract, precludes Plaintiff's unjust enrichment claim. (Def. Reply at 8, n. 5.)[12]  Again, the Court would be wary of an assertion by Plaintiff that she was not required to "click-accept" any terms of use at all either before accessing the remote software or purchasing iYogi services.  However, even if Plaintiff did enter into a "click-accept" contract, there is a question of fact as to when she did so in relation to the alleged fraud.[13]  If she "click-accepted" after the fraudulent acts took place, the contract may not be valid.

In any case, it cannot be said the pleadings make clear that a valid and enforceable contract exists such that a quasi-contract claim is inappropriate. See <u>Knudsen v. Quebecor Printing (U.S.A.), Inc.</u>, 792 F.Supp. 234, 237 (S.D.N.Y.1992) ("[C]ourts generally dismiss claims for quantum meruit on the pleadings only when it is clear from the face of the complaint that there exists an express contract that clearly controls.").

Moreover, even if there were a contract, it is well-settled that parties may plead in the alternative.  Fed. R. Civ. P.

---

[12] This argument seems in conflict with Defendant's statement, <u>supra</u> at 12.  Because Defendant's argument fails either way, the Court sees no reason to address this conflict further.
[13] The Dhar Declaration, which Plaintiff contests, states that Plaintiff was required to "click accept" iYogi's Terms of Use both before she downloaded the "Support Dock" remote connection, and again when she purchased iYogi services.  (Def. Memo Ex. 2-A ¶¶ 9, 11; Plf. Opp'n at 8.)

8(d)(2)-(3). Particularly where, as here, there are allegations of fraud in the inducement and a dispute as to whether a valid contract exists, parties can and routinely do plead in the alternative fraud, unjust enrichment, and breach of contract. Net2Globe Int'l, Inc., v. Time Warner Telecom of N.Y., 273 F.Supp.2d 436, 466 (S.D.N.Y. 2003) ("The dispute over the validity of [the] contracts permits [plaintiff] to assert unjust enrichment as an alternative to breach of contract, and . . . unjust enrichment may serve as a basis for recovery should a trier of fact determine that, in fact, no valid contract was formed or that the contractual obligations did not encompass the events underlying . . . [plaintiff]'s unjust enrichment claim." (citing Schwartz v. Asplundh Tree Expert Co. Inc., 103 F.3d 660,663 (2d Cir. 1996)). See also Mirchel v. RMJ Secs. Corp., 613 N.Y.S.2d 876, 879 (N.Y. App. Div. 1994) (unjust enrichment plead in the alternative to contract claim).

Defendant does not dispute that Plaintiff is permitted to plead in the alternative. Instead, Defendant argues that alternative pleading is impermissible here because Plaintiff's unjust enrichment claims are not plausible and supported by sufficient factual allegations. However, rather than identifying the ways in which Plaintiff's pleading is insufficient, Defendant points again to its own assertion that Plaintiff

"affirmatively pleads her contract with iYogi." (Def. Reply at 7-8.) This argument is cyclical, and is ultimately unavailing.

III. CONCLUSION

As the Complaint was timely filed, sufficiently states a claim for fraudulent inducement, and the unjust enrichment claim is not precluded by a valid enforceable contract, Defendant's Motion to Dismiss is DENIED.

Defendant must file its Answer to the Complaint within 30 days of the date of this Order.

SO ORDERED.

Dated:    New York, New York
          March 16, 2015


                              _Deborah A. Batts_
                              Deborah A. Batts
                              United States District Judge